# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF TEXAS
# TYLER DIVISION

| | | |
|---|---|---|
| STATE OF TEXAS, TEXAS HEALTH AND HUMAN SERVICES COMMISSION, | § § § § § | |
| Plaintiffs, | § § | |
| v. | § § | Case No. 6:21-cv-00191 |
| ELIZABETH RICHTER, in her official capacity as Acting Administrator of the Centers for Medicare & Medicaid Services, *et al.*, | § § § § § § § | |
| Defendants. | § | |

## DECLARATION OF DON LEE

1. My name is Donald Lee. I am over 18 and competent to make this declaration. The facts in this Declaration are based on my personal knowledge, and I would testify to these facts in open court if called upon to do so.

2. I am the President of Texas Essential Healthcare Partnerships (TEHP). TEHP is an association of over 100 Texas hospitals that participate in the State's Medicaid program as providers. Our members include urban, rural, critical access, and children's hospitals throughout the state. Our Board of Directors consists of leaders from 12 major hospital systems with locations in diverse regions of the state, from both urban and rural areas. Typically, our member hospitals are among the largest employers in their home counties, and in several areas of the state our member hospitals are the only acute care hospital provider available within miles.

1

3. TEHP supports policies that strengthen the healthcare safety-net system, and improve access to, and the availability, delivery, efficiency and funding of, quality healthcare services within the State of Texas. My responsibilities as President of TEHP include managing meetings of our Board of Directors and working to understand factors affecting their ability to deliver quality care in the Texas Medicaid program. I also speak regularly with officials from the Texas Health and Human Services Commission (HHSC), the state's Medicaid agency, to share information about factors impacting hospital Medicaid providers in the state. In my role as President of TEHP, I am familiar with the urgency hospitals communicated to HHSC concerning the need to renew the waiver on an emergency basis to help stabilize the state's acute care safety net in response to the COVID-19 pandemic.

**Information about healthcare services**

4. As a hospital association, TEHP meets with its Board members on a weekly basis to discuss Medicaid issues impacting hospitals in Texas. TEHP as an association focuses primarily on how Texas' various Medicaid supplemental payment programs interact to support the delivery of hospital acute care services to indigent Texans. In my role as TEHP President, I have developed an understanding of how important the Texas Healthcare Transformation and Quality Improvement Program ("THTQIP" or the "Texas 1115 waiver") is to the Medicaid ecosystem as a whole in this state.

5. Financially speaking, the Texas 1115 waiver authorizes not only Texas' uncompensated care (UC) pool and its Delivery System Reform Incentive Program

118547454

(DSRIP), but also the Medicaid managed care delivery system in Texas, which includes directed payment programs that additionally support the provision of Medicaid services. Directed payment programs like the multi-billion dollar Uniform Hospital Rate Increase Program (UHRIP) provide much-needed supplemental reimbursement to hospitals for each Medicaid managed care patient they assist, and the available funding for these programs is determined by the amount of "budget neutrality room" established by the Texas 1115 waiver.

6. Our member hospitals rely on the waiver and related programs, such as UHRIP, not just to provide care to uninsured Texans but also to partially offset significant shortfalls in Medicaid base rates statewide. Without the UC pool directly authorized by the Texas 1115 Waiver, our member hospitals would see substantially reduced reimbursement for the millions of dollars in charity care they provide to uninsured, low-income patients each year. As the DSRIP program authorized by the waiver expires this fall, our member hospitals will lose the funding on which they have relied to create and implement innovative collaborations with mental health providers, case coordinators, and community leaders, among other things. And without directed payment programs such as UHRIP, our member hospitals would be reimbursed for only about 60 cents of every dollar spent on a Medicaid managed care patient. Altogether, the payment programs authorized directly and indirectly through the waiver provide billions dollars of funding for the overall Medicaid program in Texas, and many of our member hospitals rely on these supplemental payments for a substantial part of their operating budget each year.

**THTQIP/DSRIP**

7. The shift to the managed-care model under THTQIP has fundamentally changed how our member hospitals deliver healthcare services to Medicaid recipients. Most Medicaid patients seen by our member hospitals are enrolled in Medicaid managed care plans. However, that change is not complete, and our member hospitals still see many of their chronic and complex Medicaid patients on a fee-for-service basis. Additionally, Texas still has a high complement of uninsured patients—including many patients who would not be eligible for Medicaid coverage even if the state elected to expand the program. The Texas 1115 waiver provides funding needed to support the care of these individuals through the UC pool and the DSRIP pool.

8. Because the waiver plays such a central role in supporting the overall healthcare safety net in Texas, the upcoming expiration of, and transition away from, DSRIP has been a topic of concern and discussion for our member hospitals since at least 2019, when we began participating in HHSC's DSRIP transition stakeholder meetings. While the expiration and transition away from DSRIP was included in the 2018 Texas 1115 waiver extension, our members are extremely concerned that they will not have the financial ability to maintain services currently supported by DSRIP, particularly services that impact uninsured patients and other patients who will not be reached by Medicaid managed care. Additionally, our members are very concerned that the expiration of DSRIP in the context of the current uncertainty regarding the future of the Texas 1115 waiver program as a whole makes it very difficult to

4

understand what funds may or may not be available for other key programs, for example directed payments under UHRIP or its proposed successor programs.

**COVID**

9. Another key factor currently impacting our member hospitals is, of course, COVID-19. The COVID-19 pandemic has dramatically changed how patients use, and how our member hospitals furnish, healthcare services. While most of our member hospitals have seen an increase in emergency-room use, all of them have also experienced a significant delay in elective and preventative care, which has a dramatic impact on overall hospital revenues. At the same time, hospital expenses have increased, particularly for staffing. Additionally, even as the pandemic begins to level off and patients begin to seek out care for other urgent needs, many of our hospitals are seeing a substantial increase in both Medicaid patients and uninsured patients as a percentage of their overall populations. All of these factors have only increased the importance of a financially stable Medicaid program to help our member hospitals maintain continuity of care.

**Extension of the Texas 1115 waiver and DSRIP**

10. During the last quarter of 2020 and the first quarter of 2021, TEHP's Board meetings consistently focused on two issues: how our hospitals were responding to COVID-19 and how a possible extension of the Texas 1115 waiver might impact our hospitals' ability to continue to respond and recover from the pandemic. My board members were unanimously concerned that the upcoming expiration of DSRIP in 2021 and the potential "fiscal cliff" posed by the expiration of

118547454

the Texas 1115 waiver in 2022 would make it difficult for their hospitals to maintain current service delivery levels for Medicaid and uninsured patient populations, especially while the hospitals continued to deal with increased costs and decreased elective procedures for insured patients resulting from the pandemic.

11.    In my role as president of TEHP, I also meet periodically with leaders from other Texas hospital associations, including the Texas Organization of Rural and Community Hospitals (TORCH), the Children's Hospital Association of Texas (CHAT), the Teaching Hospitals of Texas Association (THOT), the Texas Association of Voluntary Hospitals (TAVH) and the Texas Hospital Association (THA). The same two topics of discussion were routinely the focus of meetings I participated in with these groups in the last quarter of 2020 and the first quarter of 2021. In particular, the associations frequently discussed the increased costs hospitals were incurring to maintain staff during the COVID-19 surge in Texas, and the uncertainty many hospitals were experiencing both as a result of the pandemic and as a result of the anticipated expiration of DSRIP in 2021 and of the entire waiver in 2022. As a result of these discussions, TEHP joined a multi-association letter to HHSC and the Texas Governor expressing the importance of the Medicaid program in helping Texas' heath care safety net providers weather the pandemic. That letter isattached as Exhibit A to my declaration.

12.    I also designated representatives of TEHP to participate in an HHSC-hosted workgroup in September and October of 2020 to evaluate the UHRIP program and propose potential modifications or additions to Texas' directed payment programs

in light of the upcoming DSRIP transition. I presided over discussions of the workgroup's recommendations with our Board. The workgroup recommended development of several Medicaid supplemental payment programs, including the Comprehensive Hospital Increase Reimbursement Program (CHIRP), which is a proposed successor program to UHRIP currently being evaluated for approval by the Centers for Medicare and Medicaid Services (CMS).

13. I understand the workgroup was focused on how directed payments could be used to help offset the impact of the transition of the Texas Medicaid program away from the successful DSRIP. My board members' feedback throughout the workgroup process was that (1) stability in overall Medicaid funding would be critical to their hospitals' ability to maintain service levels during and after the pandemic; and (2) while directed payment programs focusing on supporting Medicaid managed care rates could be part of that solution, the loss of DSRIP can't be fully absorbed without some continuation or expansion of the UC pool and other funding sources to support acute hospital care for uninsured Texans. Additionally, the workgroup participants shared feedback with our Board that HHSC was concerned about creating a "fiscal cliff" by starting new programs to replace DSRIP that would be almost immediately undermined when the 1115 waiver as a whole expires in 2022. [As a result of these discussions, TEHP joined a multi-association letter to HHSC and the Texas Governor expressing the need for financial stability and the interconnected nature of Medicaid supplemental payments in Texas. The final draft of that joint letter is attached as Exhibit B to my declaration.

7

14. TEHP's member hospitals strongly supported HHSC's efforts to extend both the Texas 1115 waiver as a whole and the DSRIP program in particular on an expedited basis, given the financial uncertainty caused by COVID-19 and the upcoming expiration of the waiver program. Expedited resolution of the Texas 1115 waiver negotiation was—and remains—urgently needed for financial stability in Texas' health care safety net. It is my understanding that this position was shared among similar providers, as the attached multi-association letters reflect.

15. Once our members received word that the extension application had been approved, our association and our individual members took steps to engage with the county governments and hospital districts that operate Local Provider Participation Funds (LPPFs) in Texas, in support of setting mandatory payment rates that would be necessary to provide the non-federal share for the anticipated waiver programs and related directed payment programs provided as part of the Texas waiver approval documentation. These mandatory payments are assessed against all the hospitals in a local jurisdiction based on a uniform percentage of their net patient revenue. Once a mandatory payment rate is set, it is unusual for a local government to amend it downward, and the use of these funds is restricted by statute. The hospitals relied on the Texas waiver approval to support the mandatory payment rates to be set by the local governments. Without the January approval of the 1115 waiver, our members would not have supported these mandatory payment rates or would have advocated for reasonable delays in rate setting until more information about the Texas 1115 waiver and related programs became available.

**Rescission**

16. TEHP learned of CMS's April 16 letter purporting to rescind its January 6 approval of HHSC's extension application shortly after the letter was provided to HHSC.

17. That purported rescission created incredible uncertainty in our individual members' budgets and operational plans for furnishing care. Additionally, local governments throughout Texas are collecting mandatory payments sufficient to support the non-federal share for programs whose viability is now in doubt. These collections (particularly given an uncertain Medicaid payment) further challenge our member hospitals' cash flow and financial stability.

18. Without clarity on the viability and size of the UC pool and the budget neutrality available to support directed payments such as CHIRP, our hospitals have no idea how much funding will be available to support both their charity care and their Medicaid managed care programs. This uncertainty comes at the worst possible time, when our member hospitals are trying to support vaccination efforts, address the ongoing pandemic and the new Delta variant of COVID-19, and plan for delivery of services in a post-COVID "new normal."

19. As a result of feedback from TEHP's member hospitals, I have provided testimony at public hearings on the Texas 1115 waiver, urging HHSC to proceed expeditiously with resubmitting the waiver and stressing the importance of maintaining the same pool sizes and budget neutrality authorized by the original January 1115 waiver extension approval. TEHP also joined a multi-association

comment letter to the Governor emphasizing the importance of these issues. This comment letter is attached to my declaration as Exhibit C.

I declare under the penalty of perjury that the foregoing is true and correct.

    Executed on July 9, 2021

    */s/ Donald Lee*

    DONALD LEE, PRESIDENT, TEXAS
    ESSENTIAL HEALTHCARE PARTNERSHIPS

10
118547454

# Exhibit A

   
 

June 10, 2020

Phil Wilson
HHSC Executive Commissioner
P.O. Box 13247
Austin, Texas 78711-3247

Dear Commissioner Wilson:

On behalf of our more than 450 member hospitals and health systems, the Texas Hospital Association thanks you for your continued support of health care providers and your tireless work to ensure access to essential services for Texans through the COVID-19 pandemic and beyond.

Texas hospitals are proud to serve on the frontlines, protecting the health and safety of our communities. Like the state and other employers, Texas hospitals are facing significant financial challenges and are working to recover from unparalleled expenses and losses as a result of COVID-19. We understand that state leadership has asked the Texas Health and Human Services Commission and other state agencies to identify cost savings to reduce state appropriations by 5% for the 2020-2021 biennium. We write to ask that you preserve hospitals' base Medicaid payment rates and the enhanced rates for trauma, rural and safety net hospitals.

When the outbreak reached Texas, our facilities quickly adjusted their operations, including postponing non-essential surgeries and procedures and building out alternative care sites, to meet the state's growing need for COVID-19 care. The American Hospital Association estimates that from March through June 2020, hospitals and health systems across the country will have suffered more than $200 billion in losses related to the pandemic. At a time when access to specialized, critical care is needed most, hospitals have been forced to furlough and lay off staff, including direct care providers.

The Medicaid program is critical to the stability of the health care safety net, on which millions of Texans rely. Cutting hospital rates—which currently do not cover the full cost of providing care—would jeopardize Medicaid clients' access to timely, medically necessary care. We are grateful that Medicaid and CHIP benefits and eligibility levels, public health services, behavioral health care and other services for vulnerable Texans are not subject to the cuts.

As employers and businesses, we understand the economic challenge the pandemic presents for both the state and HHSC. Reducing the budget of an agency the size of HHSC is no small task, and tough decisions must be made. However, we are hopeful that, in these critical times, you will prioritize Texans' access to needed care and payments to support hospitals' economic stabilization and recovery. In addition, we encourage you to consider using the enhanced federal medical assistance percentage

savings and the anticipated increase in Medicaid managed care organizations' experience rebates toward the 5% target. Fewer people are accessing non-COVID-19-related health care services during the pandemic, resulting in fewer claims being paid by the Medicaid MCOs and higher profit margins, which ultimately are turned over to the state through the experience rebate.

The strength of our hospitals is fundamental to combatting COVID-19 and supporting the state's economic revival. We look forward to continuing to work with you to achieve that strength. Thank you for your commitment to health and wellness of all Texans and for considering this request. Please do not hesitate to reach out with any questions or for further information.

Sincerely,

Ted Shaw
President/CEO
Texas Hospital Association

John Henderson
President/CEO
Texas Organization of Rural & Community Hospitals

W. Stephen Love
President/CEO
Dallas-Fort Worth Hospital Council

Maureen Milligan
President/CEO
Teaching Hospitals of Texas

Stacy Wilson
President
Children's Hospital Association of Texas

Larry L. Tonn
Principal
Texas Association of Voluntary Hospitals

Donald Lee
President
Texas Essential Healthcare Partnerships

Cc: Trey Wood, chief financial officer, HHSC

# Exhibit B



Sept. 21, 2020

Cecile Young
Executive Commissioner
Texas Health and Human Services Commission
P.O. Box 13247
Austin, Texas 78711-3247

Dear Commissioner Young:

On behalf of the more than 450 hospitals and health systems our organizations collectively represent, we thank you for your service to the state of Texas and stand ready to assist you in your new role. As you know, the hospital finance landscape is ever-changing, and Texas hospitals currently are facing a number of complex issues that impact both our work and the patients we serve. Specifically, we want to share our perspective on the Uniform Hospital Rate Increase Program and how a number of other programs could work to ultimately impact UHRIP and Texas' overall system of financing hospital payments for indigent and Medicaid clients.

We appreciate the Texas Health and Human Services Commission's transparency and willingness to work with stakeholders on the future of the Uniform Hospital Rate Increase Program. We offer the following principles to guide HHSC's approach for UHRIP and other hospital payment programs moving forward.

1. **Navigate and Mitigate Uncertainty in the Hospital Finance System Together.** A strong hospital finance system is critical to ensure Texas patients can access the best possible care. But a number of complex variables contribute to the uncertainty that affects both providers' and the state's ability to plan for a strong and reliable hospital system. Texas hospitals are eager to work together and with the state to improve and inform these programs going forward.

    - **Budget Neutrality & the Medicaid 1115 Waiver**. Perhaps the most significant unanswered question is around how budget neutrality would be calculated in a subsequent Medicaid 1115 Waiver. In response to the Centers for Medicare & Medicaid Services' adjustment to budget neutrality calculations under 1115 Waivers, HHSC has begun modeling potential budget neutrality scenarios. While we understand the models rely on assumptions that require further clarification from CMS, we ask that you work closely with stakeholders to ensure we can plan for and advise on the future of the waiver.

    - **Future of DSRIP**. Texas hospitals appreciate the progress HHSC has made to transition the Delivery System Reform Incentive Payment program, and we understand that the COVID-19 pandemic challenges further progress for both providers and the state. Texas hospitals and providers still support HHSC pursuing at least a one-year extension of DSRIP, as stated in our previous requests.

- **Available UHRIP Funding**. We understand that CMS requires robust documentation to support the rates proposed under UHRIP, and we appreciate HHSC's attention to these requirements. Texas hospitals look forward to working with HHSC to increase the amount of available funding under UHRIP.

2. **Preserve the Inherent Purpose of UHRIP**. Texas hospitals are committed to providing the best possible care for every Texan. Medicaid payment rates historically do not cover the actual cost of providing hospital care. HHSC should maintain the original intent of UHRIP, which is to make hospital payment more commensurate with the cost of providing care and increase access across the state. While we understand that CMS wants measurable, demonstrable ties to the state's quality strategy, UHRIP payments should not be contingent upon performance. As currently designed, UHRIP addresses the Texas Medicaid quality strategy goals of ensuring timeliness of and access to services and improving member satisfaction with care.  Hospitals will help HHSC develop an evaluation plan to measure the impact of UHRIP on these two quality strategies, or other strategies if determined to be more appropriate.

3. **Quality Incentive Arrangements Can Work Alongside UHRIP**. Separately, HHSC should consider opportunities to develop an incentive arrangement in the context of DSRIP transition. Such an arrangement would include specified activities, targets performance measures, or quality-based outcomes that support program initiatives as specified in the state's quality strategy, which would also complement the goals of UHRIP. Quality incentives are most effective when built on top of a system that adequately reimburses providers' costs.

We appreciate your work to support Texas hospitals and your willingness to engage with us on these issues. We look forward to continuing these important discussions, and we stand ready to assist you in protecting the health and well-being of Texas patients.

Sincerely,

# Exhibit C

   
 

May 12, 2021

The Honorable Greg Abbott
Office of the Governor
P.O. Box 12428
Austin, Texas 78711-2428

Dear Governor Abbott:

On behalf of the hospitals, health systems and health care providers we collectively represent, we request your support of two key priorities for the potential negotiations around Texas' Medicaid 1115 Waiver extension. As you know, the Centers for Medicare & Medicaid Services recently rescinded Texas' 10-year Medicaid 1115 Waiver extension that it approved in January. Texas hospitals truly appreciate your leadership to secure a waiver extension that was carefully tailored to meet the needs of the health care safety net and Texas patients. You negotiated and secured two key items in the January waiver extension that determine providers' ability to deliver quality health care services: a favorable budget neutrality calculation and strong uncompensated care pools. You well know that the stability of Texas' health care safety net hinges on these items, and we urge the state to prioritize them again in potential future waiver extension negotiations.

While the current waiver and its existing UC pool remain intact through Sept. 30, 2022, the waiver extension rescission hurls the state at a "budget neutrality" or fiscal cliff that is severe and imminent. Without the waiver extension, the funds available to Texas in any future waiver—regardless of whether it includes any Medicaid expansion components—are severely limited. Short of the technical adjustments from the extension, any new waiver and its associated funding would be wholly insufficient to support the 4.6 million Medicaid beneficiaries and 5 million uninsured Texans that rely on our health care safety net. In addition, Texas is committed to maintaining its uncompensated care pools as an essential part of the safety net. Assuming Texas resubmits its previous extension request, Texas hospitals urge support of the following priorities.

1. **Budget Neutrality Determinations: The budget neutrality determinations in any future waiver extension must be the same as or better than what CMS approved in January 2021.**

    a. Texas sought and received the necessary budget neutrality room to sustain needed programs in the January extension. An inadequate budget neutrality determination threatens to significantly reduce the overall available funding for Texas' new waiver extension period and hinder Texas′ ability to maintain its current Medicaid program, services for the uninsured and payment programs to offset costs providers incur for treating underinsured and uninsured individuals.
    b. Without adequate budget neutrality room, the state's ability to transition the Delivery System Reform Incentive Payment program and improve care quality with new directed payment programs would be significantly limited. The Texas Health and Human Services Commission

currently is working with CMS to approve and implement several new DPPs through Medicaid managed care. These new payments will provide safety net providers, particularly rural and behavioral health providers, with invaluable sources of supplemental funds to improve care quality and offset looming losses from the scheduled DSRIP transition. The state only has budget neutrality room under the current waiver to fund the programs for one year. A budget neutrality rebasing that cuts funds available for these new programs just as they are getting off the ground would result in the "fiscal cliff" that would have serious implications for providers and patients.

2. **Strong Uncompensated Care Pools: Texas needs continued funding for the existing uncompensated care pool as well as new funding for the new UC pool for community mental health centers and public health providers that was created in the January 2021 extension.**

    a. Even if Texas were to expand Medicaid eligibility, Texas providers would continue to incur significant UC costs. Expansion would cover about 1.2 million more Texans, leaving the remaining 3.8 million still reliant on indigent care services that the UC funding helps offset the cost of.
    b. Limiting or eliminating UC pools hurts patients' access to care and the safety net providers that are required by the Emergency Medical Treatment and Labor Act to provide emergency care for anyone who seeks it, regardless of their ability to pay. Even after funding from the waiver and other supplemental payment programs were applied, Texas hospitals incurred more than $4.6 billion in UC costs in 2020 alone.

Texas hospitals have supported and led efforts to address the high number of uninsured in Texas. Coverage expansion alone is insufficient to meet the unique health care needs of a state as demographically diverse and fast growing as Texas. While Texas hospitals believe we need both coverage expansion and a strong waiver, the waiver extension provided stability for an essential component of Texas' health care safety net.

We look forward to continuing our close work to address the waiver extension rescission and appreciate your leadership on this issue. A clear process going forward is critical to providers' ability to plan for the future and ensure access to care. Thank you for your work to protect the health of all Texans.

Sincerely,

Ted Shaw
President/CEO
Texas Hospital Association

Stacy Wilson
President
Children's Hospital Association of Texas

Maureen Milligan
President/CEO
Teaching Hospitals of Texas

John Henderson
CEO/President
Texas Organization of Rural & Community Hospitals

Larry L. Tonn  
Principal  
Texas Association of Voluntary Hospitals

Donald Lee  
President  
Texas Essential Healthcare Partnerships