IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
TYLER DIVISION

THE STATE OF TEXAS; TEXAS    §
HEALTH AND HUMAN SERVICES    §
COMMISSION    §
              Plaintiffs,    §
   §
v.    §    CIVIL ACTION NO. 6:21-CV-191
   §
CHIQUITA BROOKS-LASURE, in    §
her official capacity as    §
Administrator of the Centers    §
for Medicare & Medicaid Services,    §
et al.    §
              Defendants.    §

**<u>PARTIAL MOTION FOR JUDGMENT ON THE PLEADINGS</u>**

i

# TABLE OF CONTENTS

I.      Introduction ..................................................................................................... 1

II.     Standard of Review ........................................................................................ 1

III.    Argument........................................................................................................ 2

     a.      The Court should dismiss Plaintiffs' claim to compel agency action
         unlawfully withheld or unreasonably delayed (Count IX). .................................. 2

     b.      The Court should dismiss Plaintiffs' estoppel claim (Count X). ......................... 9

     c.      The Court should dismiss Plaintiffs' Spending Clause claim (Count XI). ...........14

IV.     Conclusion ...................................................................................................17

# TABLE OF AUTHORITIES

## CASES

*Andrade v. Gonzales*,
  459 F.3d 538 (5th Cir. 2006) ............................................................ 12

*Arlington Cent. Sch. Dist. Bd. Of Educ. v. Murphy*,
  548 U.S. 291 (2006) ......................................................................... 14

*Ashcroft v. Iqbal*,
  129 S. Ct. 1937 (2009) ....................................................................... 1

*Bosarge v. Mississippi Bureau of Narcotics*,
  796 F.3d 435 (5th Cir. 2015) ............................................................. 2, 3

*Campo v. Allstate Inc. Co.*,
  562 F.3d 751 (5th Cir. 2009) ............................................................. 10

*City of New York v. Dep't of Defense*,
  913 F.3d 423 (4th Cir. 2019) .............................................................. 6

*Cohen v. Allstate Ins. Co.*,
  924 F.3d 776 (5th Cir. 2019) ............................................................. 10

*Doe v. MySpace, Inc.*,
  528 F.3d 413 (5th Cir. 2008) .............................................................. 1

*Dorsey v. Portfolio Equities, Inc.*,
  540 F.3d 333 (5th Cir. 2008) ............................................................. 15

*Fund for Animals, Inc. v. BLM*,
  460 F.3d 13 (D.C. Cir. 2006) .............................................................. 5

*Gentilello v. Rege*,
  627 F.3d 540 (5th Cir. 2010) ............................................................. 1, 2

*Gowland v. Aetna*,
  143 F.3d 951, (5th Cir. 1998) ............................................................ 11

*Gruver v. Louisiana Bd. of Supervisors for the Louisiana State University*,
  959 F.3d 178 (5th Cir. 2020) ....................................................... 14, 15, 16

*Guerrero v. Clinton*,
  157 F.3d 1190 (9th Cir. 1998) ............................................................ 5

*Harris County v. MERSCORP Inc.*,
  791 F.3d 545 (5th Cir. 2015) .............................................................. 9

*Heckler v. Community Health Servs. of Crawford Cnty, Inc.*,
  467 U.S. 51 (1984) ......................................................................................... 9

*Invention Submission Corp. v. Rogan*,
  357 F.3d 452 (4th Cir. 2004) ......................................................................... 5

*Knapp v. USDA*,
  796 F.3d 445 (5th Cir. 2015) ........................................................................12

*Mendoza-Tarango v. Flores*,
  982 F.3d 395 (5th Cir. 2020) ......................................................................... 6

*Nat'l Fed'n of Indep. Bus. v. Sebelius*,
  567 U.S. 519 (2012) .......................................................................... 14, 15, 16

*Norton v. S. Utah Wilderness Alliance*,
  542 U.S. 55 (2004) ...............................................................................*passim*

*Office of Personnel Management v. Richmond*,
  496 U.S. 414 (1990) ................................................................................10, 11

*Pennhurst State Sch. & Hosp. v. Halderman*,
  451 U.S. 1 (1981) ..........................................................................................13

*Robertson-Dewar v. Holder*,
  646 F.3d 226 (5th Cir. 2011) ........................................................................12

*Rosas v. U.S. Small Bus. Admin.*,
  964 F.2d 351 (5th Cir, 1992) ........................................................................10

*South Dakota v. Dole*,
  483 U.S. 203 (1987) ......................................................................................14

*Tex. Educ. Agency v. U.S. Dept. of Educ.*,
  908 F.3d 127 (5th Cir. 2018) ........................................................................14

*Texas v. Rettig*,
  987 F.3d 518 (5th Cir. 2021) ........................................................................14

*United States v. Cushman & Wakefield, Inc.*,
  275 F. Supp. 2d 763 (N.D. Tex. 2002) ..................................................9, 10, 11

*United States v. Marine Shale Processors*,
  81 F.3d 1329 (5th Cir. 1996) ....................................................................9, 10, 13

*United States ex rel. Long v. GSDM Idea City, L.L.C.*,
  798 F.3d 265 (5th Cir. 2015) ......................................................................... 1

iv

*Walmart Inc. v. U.S. Dep't of Justice*,
   517 F. Supp. 3d 637 (E.D. Tex. 2021) ................................................................. 6

*Whitlock Const., Inc. v. Glickman*,
   71 F. Supp. 2d 1154 (D. Wyo. 1999) ................................................................. 5

*Wild Fish Conservancy v. Jewell*,
   730 F.3d 791 (9th Cir. 2013) ................................................................. 5

**STATUTES**

5 U.S.C. § 551 ................................................................................................4, 5

5 U.S.C. § 701 ................................................................................................. 4

5 U.S.C. § 706 ................................................................................................1, 2

42 U.S.C. § 1315 ................................................................................................14, 15

**RULES**

Fed. R. Civ. P. 12 ................................................................................................ 1

**REGULATIONS**

42 C.F.R. § 431.416 ................................................................................................12

42 CFR part 438 ................................................................................................ 7

42 C.F.R. § 438.4 ................................................................................................ 9

42 C.F.R. § 438.5 ................................................................................................ 9

42 C.F.R. § 438.6 ................................................................................................6, 9

## I.    Introduction

Pursuant to the Court's Order of September 28, 2021, ECF No. 66, Defendants move for partial judgment on the pleadings as to Counts IX, X, and XI of Plaintiffs' First Amended Complaint. Plaintiffs' Amended Complaint fails to state a claim for which relief may be granted under 5 U.S.C. § 706(1) because, among other things, the agency actions they claim have been unlawfully withheld or unreasonably delayed are not required by law. Plaintiffs' estoppel claim fails, because estoppel cannot lie against the federal government where public money is at stake, nor have Plaintiffs alleged all of the necessary elements of an estoppel claim. And Plaintiffs fail to state a claim under the Spending Clause because, among other things, they do not challenge the constitutionality of any statute or regulation. For the reasons explained herein, the Court should dismiss those claims and grant partial judgment in favor of Defendants.

## II.   Standard of Review[1]

"[M]otions for judgment on the pleadings may be filed at any time after the pleadings are closed so long as filing them does not delay trial." *United States ex rel. Long v. GSDMIdea City, L.L.C.*, 798 F.3d 265, 275 (5th Cir. 2015); *see* Fed. R. Civ. P. 12(c). Courts evaluate Rule 12(c) motions "using the same standard as a motion to dismiss under rule 12(b)(6) for failure to state a claim." *Gentilello v. Rege*, 627 F.3d 540, 543-44 (5th Cir. 2010) (quoting *Doe v. MySpace, Inc.*, 528 F.3d 413, 418 (5th Cir. 2008)). "To avoid dismissal a plaintiff must plead sufficient facts 'to state a claim for relief that is plausible on its face.'" *Id*. at 544 (quoting *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the

---

[1] Given the Court's familiarity with the background of this case, Defendants do not repeat it here.

misconduct alleged …. [courts] do not accept as true conclusory allegations,  unwarranted factual inferences, or legal conclusions." *Id*. (citations  omitted).

### III.     Argument
#### a.    **The Court should dismiss Plaintiffs' claim to compel agency action unlawfully  withheld or unreasonably delayed (Count IX).**

Plaintiffs'  Amended Complaint  does not state a claim under 5 U.S.C. § 706(1)  for which relief may be granted. Plaintiffs'  § 706(1) claim seeks to compel Defendants' compliance  with alleged procedural and substantive  obligations  created by the purported January 15 extension approval of Texas's Medicaid demonstration  project (THTQIP) and its Special Terms and Conditions  (STCs). 1st Amd. Compl.  ¶¶ 186-87. The alleged procedural obligations  cannot be compelled,  if at all, unless Plaintiffs  first prevail on the merits of their other APA claims,  such that the January 15 extension  approval is operative, and the alleged  substantive  obligations cannot be compelled  at all.

As an initial  matter, the Court is not confined to the face of the Amended Complaint  to assess the viability  of Plaintiffs'  § 706(1) claim. The Amended Complaint  specifically  references and relies on both the January 15 letter and the STCs to support Plaintiffs'  Count IX allegations. *See* 1st Amd. Compl.  ¶¶ 178-79. And even if Plaintiffs  had not so clearly incorporated these documents into their pleading,  they can still  be considered because they are attached to this motion. *See* Exhibit  A, January 15 Letter and attachments. The Fifth Circuit "has held that [d]ocuments  that a defendant attaches to a motion  to dismiss  are considered part of the pleadings  if they are referred to in the plaintiff's  complaint  and are central to her claim …. Given the similarities  in the analyses under Rule 12(c) and Rule 12(b)(6), we will  apply the same rule to documents  attached to the Defendants' motion  for judgment  on the pleadings." *Bosarge v. Mississippi Bureau of Narcotics*, 796 F.3d 435, 440 (5th Cir. 2015). Moreover, the content of the

documents trumps any contrary assertions made in Plaintiffs' Amended Complaint. *See id.* at 440-41 (distinguishing attached affidavits, which may only "aid in evaluating the pleadings," from "contracts and medical records attached to a complaint, which we have held generally trump contradictory allegations in the complaint.").

Plaintiffs first seek to compel alleged procedural obligations that this Court held in its preliminary rulings are required by the purported January 15 extension approval or the STCs, including participation in a collaborative negotiation process and engagement in every other day meetings with Plaintiffs concerning directed-payment programs. 1st Amd. Compl. at ¶ 186.[2] Plaintiffs do not allege that these procedural obligations arise from any source other than the January 15 letter and its STCs. *See id.* ¶¶ 32, 58, 83-84, 103, 105, 177-78, 180. Therefore, absent the January 15 extension, there are no statutory or regulatory obligations on Defendants to engage in any of the procedural steps alleged by Plaintiffs. While this is also true of the substantive obligations Plaintiffs allege the January 15 letter and STCs impose, those claims are independently barred because they are not required by the January 15 letter or STCs, *see infra*.

"[A] claim under § 706(1) can proceed only where a plaintiff asserts that an agency failed to take a *discrete* agency action that it is *required to take*." *Norton v. S. Utah Wilderness Alliance*, 542 U.S. 55, 64 (2004). The alleged procedural obligations of the January 15 letter and STCs are neither legally required nor discrete. The substance of this lawsuit concerns whether the purported January 15 extension approval is in force despite having been voided, either by operation of law, or, as Plaintiffs contend, through CMS's April 16 letter. The Court has not yet reached the merits of that question, and currently any obligations allegedly stemming from the

---

[2] Defendants dispute that the STCs, if in force, would impose legally binding obligations on Defendants, *see* Prelim. Inj. Opp. ECF No. 23, but given the Court's preliminary rulings, Defendants will not reargue that point in this filing.

January 15 letter or its STCs exist only by virtue of this Court's Preliminary Injunction, which requires CMS to "*treat* Texas's demonstration project . . . as currently remaining in effect *as it existed* on April 15, 2021, ECF No. 47, at 26 (emphasis added).[3] In the absence of the preliminary injunction, the January 15 extension would not be in effect and thus could not impose any obligations on Defendants. Accordingly, while Plaintiffs could seek to enforce compliance with the preliminary injunction (if necessary) while it remains in place, there is no separate legal requirement for Defendants to conform to any procedural aspects of the STCs that can arguably be compelled under § 706(1). Plaintiffs' claim is premature because it assumes that the merits of this case will be resolved in Plaintiffs' favor. Unless and until this Court permanently enjoins Defendants to "treat Texas's demonstration project . . . as currently remaining in effect as it existed on April 15, 2021," ECF No. 47 at 26, there is no requirement of agency action that could be unlawfully withheld or unreasonably delayed under § 706(1).

The alleged procedural obligations also are not discrete action as contemplated by the Supreme Court in *Norton*. An ongoing agency consultation process is not "a discrete agency action" and thus the Court does not have authority to compel such a process. The APA defines "agency action" as "the whole or a part of an agency rule, order, license, sanction, relief, or the equivalent or denial thereof, or failure to act." 5 U.S.C. §§ 551(13), 701(b)(2). Each of these categories of action is then further defined. *See id.* §§ 551(4), (6), (8), (10), (11). A "'failure to act' is properly understood as . . . a failure to take one of the agency actions . . . defined in § 551(13)." *Norton*, 542 U.S. at 62.

---

[3] Previously, because of Plaintiffs' pending appeal before the Departmental Appeals Board, Defendants were obligated to treat the January 15 letter as in force, but Plaintiffs have now voluntarily dismissed that appeal.

Courts "have long recognized" that the term "agency action," while "expansive," "is not so all-encompassing as to authorize . . . judicial review over everything done" by an agency. *Fund for Animals, Inc. v. BLM*, 460 F.3d 13, 19-20 (D.C. Cir. 2006); *Invention Submission Corp. v. Rogan*, 357 F.3d 452, 459 (4th Cir. 2004); *see Whitlock Const., Inc. v. Glickman*, 71 F. Supp. 2d 1154, 1159 (D. Wyo. 1999). "Agencies prepare proposals, conduct studies, meet [*i.e.*, consult] with Members of Congress and interested groups, and engage in a wide variety of activities that comprise the common business of managing government programs." *Fund for Animals*, 460 F.3d at 19-20. Such activities do not constitute agency action. *See id.*

The process contemplated by the STCs is not an "agency action." Rather, it is an ongoing process through which CMS works collaboratively with Texas to consider, negotiate, and potentially approve requests for directed-payment programs. *See* Ex. A, STCs 29-34, at 47-49. Such a process cannot reasonably be viewed as a "rule," 5 U.S.C. § 551(4), "order," *id.* § 551(6), "license," *id.* § 551(8), "sanction," *id.* § 551(10), or "relief," *id.* § 551(11). *See, e.g.*, *Fund for Animals*, 460 F.3d at 19-20 (an agency's budget request is not agency action); *Wild Fish Conservancy v. Jewell*, 730 F.3d 791, 801 (9th Cir. 2013) (closing the gates of a dam is not fairly analogous to a "rule, order, license, sanction, [or] relief"); *Guerrero v. Clinton*, 157 F.3d 1190, 1195 (9th Cir. 1998) (agency response to a congressional reporting requirement is not agency action). The inappropriateness of an order compelling participation in this ongoing collaborative process under § 706(1) is made clear by the practical form that such relief would necessarily take.

> Courts are well-suited to reviewing specific agency decisions, such as rulemakings, orders, or denials. We are woefully ill-suited, however, to adjudicate generalized grievances asking us to improve an agency's performance or operations....When courts undertake such generalized review of agency operations, they are necessarily forced either to enter a disfavored 'obey the law' injunction . . . or to engage in day-to-day

oversight of the executive's administrative practices….Both alternatives are foreclosed by the APA, and rightly so.

*Walmart Inc. v. U.S. Dep't of Justice*, 517 F. Supp. 3d 637, 655 (E.D. Tex. 2021) (quoting *City of New York v. Dep't of Defense*, 913 F.3d 423, 431 (4th Cir. 2019)).

The substantive actions Plaintiffs' § 706(1) claim seeks to compel should be dismissed for another, independent reason: they are not required by the January 15 letter, the STCs, or any other law. Plaintiffs allege that "Defendants' failure to approve the directed payment programs in a timely manner … must be enjoined," 1st Am. Compl. ¶ 186, and that "Plaintiffs are entitled to declaratory judgment that Defendants may not reject the directed-payment programs based on their size in comparison to Texas's larger Medicaid program," 1st Am. Compl. ¶ 187. Relief may not be granted under § 706(1) on either of these claims because "the only agency action that can be compelled under the APA is action legally *required*." *Norton*, 542 U.S. at 63. This limitation ensures that the action a plaintiff seeks to compel is "demanded by law," and not merely within the agency's discretion. *Id*. at 64-65 ("[T]he APA carrie[s] forward the traditional practice" under writs of mandamus, which were limited "to enforcement of a specific, unequivocal command," and "rules out judicial direction of . . . action that is not demanded by law.").

Approval of directed-payment programs is not "demanded by law" and thus is not the sort of "ministerial or non-discretionary act" that can be compelled under § 706(1). *Id*. As is made clear in both the text of the January letter and the STCs, the directed payments *cannot* be approved unless they meet the standards of 42 C.F.R. § 438.6, which does not require CMS to approve payments at all or on any timeline. *See* 42 C.F.R. § 438.6; *see also, e.g., Mendoza-Tarango v. Flores*, 982 F.3d 395, 400-401 (5th Cir. 2020) (explaining the specificity with which regulations must impose legal obligations upon agencies in order to be compelled by a Court

order). Both the text of the January 15 letter and STC 29 also explicitly  state that neither

document  is itself an approval nor compels the approval of any directed-payment  program. Ex. A

at 6 ("These [state directed] payments  are not being approved or opined  upon  as part of this

demonstration  renewal . . . .To the extent regulatory  requirements  concerning  state-directed

payments  in 42 CFR part 438 are not expressly  waived  or identified  as not applicable,  they

continue to apply in full force; in the event of any incompatibility  between  regulatory

requirements  and what is stated in the STCs, the regulations  would prevail."); Ex. A at 47- 48

(STC 29) ("Description  of a particular  state directed payment  in these STCs does not qualify  as

CMS approval,  nor does it negate the approval and other requirements  of 42 CFR 438.6(c).

Notwithstanding  these STCs, all federal standards and requirements  under 42 CFR 438.6(c), or

successor regulations,  will apply."). Indeed, Plaintiffs  allege this explicitly  in their Amended

Complaint.  1st Amd. Compl.  ¶ 83 ("[T]he STCs did not mandate that CMS approve the directed

payment programs.")

  Nor does the process established  by the STCs create any requirement  of approval by

implication—even  assuming an "implied  obligation"  could satisfy the Supreme Court's

requirement  of a "specific, unequivocal  command"  or one "demanded  by law," *Norton*, 542 U.S.

at 63-65. STC 30 states that "the state and CMS will work collaboratively  towards *consideration*

of approval of state requests." Ex. A at 48. Consideration  of approval does not demand approval.

STC 33 states that CMS will evaluate information  provided  by the state "to determine  whether

CMS anticipates  that the request may be considered  *approvable*." *Id.* at 48-49. An obligation  to

determine whether something  may be considered  approvable  likewise does not demand approval.

Moreover, although  the STCs establish timelines  for working  towards consideration  of approval

of requested payments,  in keeping with the text of the January letter and STC 29, they at no point

deprive CMS of its authority to deny the requested payments because they are *not approvable*. STCs 33 and 34 direct CMS to act within a certain time either to notify Texas that a requested payment will be approved or to request additional modification if CMS believes a request can be made approvable. *Id.* at 48-49. However, these STCs do not direct any particular action if CMS makes a final decision that the requested directed-payments cannot be made approvable. Indeed, both STCs provide timelines in advance of "a final decision" or "final consideration of the proposal," not in advance of "approval." *Id.* Thus, approvals of Texas's directed-payment programs are a quintessential exercise of discretion that cannot be compelled under the APA.

Additionally, even if CMS were required by statute, regulation, or the STCs to make decisions on Plaintiffs' requests for directed payments by a specific deadline (and it is not, *see* STC 34, Ex. A at 49), the Court could not compel CMS to approve the payments. "[W]hen an agency is compelled by law to act within a certain time period, but the manner of its action is left to the agency's discretion, *a court can compel the agency to act, but has no power to specify what the action must be*." *Norton*, 542 U.S. at 65 (emphasis added). Thus, the Court lacks authority to require CMS to approve these payments. CMS is working collaboratively with Plaintiffs to agree upon directed-payment programs that are approvable under the applicable regulations, but CMS nevertheless retains the authority to deny the proposed programs at any time. No set of facts Plaintiffs could show could alter this conclusion emanating from the controlling law, the January letter, or the STCs, and therefore Plaintiffs cannot state a claim on which relief may be granted as to approval of the STCs.

Plaintiffs attempt to evade these restrictions by asking for a declaratory judgment that the proposed directed-payment programs may not be rejected on the basis of their size. This effort also fails. As an initial matter, a declaratory judgment is only a remedy, not its own cause of

action, so Plaintiffs are still subject to the requirements imposed by § 706(1), which provides their cause of action. *Harris County v. MERSCORP Inc.*, 791 F.3d 545, 552 (5th Cir. 2015). More importantly, as explained, both the January letter and the STCs explicitly reserve to CMS the authority to approve or reject directed-payments notwithstanding any of the terms of those documents. Ex. A at 6, 48 (STC 29). Additionally, the size of proposed directed-payments is a factor that *must* be considered under 42 C.F.R. § 438.6, which CMS is bound to apply in determining whether to approve a directed-payment program. *See* Ex. A at 6, 48 (STC 29); 42 C.F.R. § 438.6(c)(2)(i); 42 C.F.R. § 438.4 (requiring approval by CMS of the actuarial soundness of capitation rates for directed-payment programs); 42 C.F.R. § 438.5 (establishing standards for actuarially sound capitation rates). The Court thus cannot direct CMS not to consider this factor.

Because Plaintiffs have not stated a claim under § 706(1), the Court must dismiss their claim. Even if the Court finds that Plaintiffs' effort to compel alleged procedural obligations, though premature, may be maintained, it should nevertheless dismiss the substantive aspect of this claim.

### b.  The Court should dismiss Plaintiffs' estoppel claim (Count X).

In Count X, Plaintiffs seek to evade the state and federal notice-and-comment requirements of the controlling statute and regulations on the basis of alleged assurances by CMS that Plaintiffs were exempt from the requirements. *See* 1st Amd. Compl. ¶ 190. Even assuming estoppel can apply against the government in some circumstances, it cannot apply where, as here, public money is at stake." *United States v. Cushman & Wakefield, Inc.*, 275 F. Supp. 2d 763, 768 (N.D. Tex. 2002) (citing *Office of Personnel Management v. Richmond*, 496 U.S. 414, 422, 426 (1990)); *see also, e.g., Campo v. Allstate Inc. Co.*, 562 F.3d 751, 757 n.46 (5th Cir. 2009) ("If federal funds are implicated, Campo's equitable estoppel claim would be

9

barred."); *Rosas v. U.S. Small Bus. Admin.*, 964 F.2d 351, 360 (5th Cir, 1992) ("claims for estoppel cannot be entertained where public money is at stake."). Although this rule is often applied in situations where a plaintiff seeks the payment of a debt that ultimately issues from the federal fisc, *see, e.g., Cohen v. Allstate Ins. Co.*, 924 F.3d 776, 780 (5th Cir. 2019) (applying *Richmond* to flood insurance contracts), the reasoning is no less applicable in the present situation, in which estoppel would compel provision of federal Medicaid funding to Texas in the absence of statutory or regulatory authority. Plaintiffs' estoppel claim thus should be dismissed at the threshold.

For any claim "for money from the Federal Treasury," the Appropriations Clause "provides an explicit rule of decision . . . [T]he payment of money from the Treasury must be authorized by a statute." *Richmond*, 496 U.S. at 424. The Appropriations Clause has a "fundamental and comprehensive purpose . . . to assure that public funds will be spent according to the letter of the difficult judgments reached by Congress as to the common good, and not according to the individual favor of Government agents or the individual pleas of litigants." *Id.* at 428. For this reason, estoppel that obliges the payment of public funds cannot lie.

> [O]peration of estoppel against the Government in the context of payment of money from the Treasury could in fact render the Appropriations Clause a nullity. If agents of the Executive were able, by their unauthorized oral or written statements to citizens, to obligate the Treasury for the payment of funds, the control over public funds that the Clause reposes in Congress in effect could be transferred to the Executive. If, for example, the President or Executive Branch officials were displeased with a new restriction on benefits imposed by Congress to ease burdens on the fisc . . . and sought to evade them, agency officials could advise citizens that the restrictions were inapplicable. Estoppel would give this advice the practical force of law, in violation of the Constitution.

*Id.*; *see also United Stated v. Marine Shale Processors*, 81 F.3d 1329, 1348-49 (5th Cir. 1996) ("Were courts to estop the United States readily, the executive branch could use this doctrine strategically to achieve results Congress intended to prevent, thus delivering lawmaking power to

the executive in a manner that the first sentence of Article I does not contemplate." This general principal "has particular force when a private party seeks to avoid the coverage of a law because of a government agent's misrepresentation that the law does not apply.").

In this case, CMS incorrectly informed Plaintiffs that they were exempt from mandatory public notice and comment requirements that underlie the provision of Medicaid funds through a demonstration project. Plaintiffs now seek to estop Defendants from refusing to provide them with Medicaid funds pursuant to the purported January 15 demonstration project extension. In other words, Plaintiffs seek to compel by estoppel the payment of money from the Treasury, on the basis of alleged statements by Executive Branch officials, regardless of whether the exemption from notice and comment or the January 15 extension approval are legally valid and thus regardless of whether such payment is authorized by statute and regulation. This use of estoppel is not permitted. *See Richmond*, 496 U.S. at 427; *see also, e.g., Gowland v. Aetna*, 143 F.3d 951, 955 (5th Cir. 1998) ("When federal funds are involved, the judiciary is powerless to uphold a claim of estoppel because such a holding would encroach upon the appropriation power granted exclusively to Congress by the Constitution."); *Cushman & Wakefield*, 275 F. Supp. 2d at 769-770 (explaining the limitation on estoppel when a case implicates federal monies and an agency's action in its sovereign capacity). If the Court determines that Texas did not adequately justify an exemption from notice and comment and thus CMS improperly granted it, the Court could not nonetheless order CMS to expend federal funds for the demonstration project on terms Congress did not authorize based on a theory of estoppel. Because federal funds are implicated, Plaintiffs' equitable estoppel claim is barred.

Even if the Court were to conclude that Plaintiffs' claim is not barred because of the public money at stake, the claim would still fail, as the Amended Complaint does not allege

several necessary elements. "[The Fifth Circuit] has not decided whether equitable estoppel may lie against the government, but even if it does, 'the burden that a petitioner must meet is very high.'" *Knapp v. USDA*, 796 F.3d 445, 461 (5th Cir. 2015) (quoting *Robertson-Dewar v. Holder*, 646 F.3d 226, 230 (5th Cir. 2011)); *see also Andrade v. Gonzales*, 459 F.3d 538, 545 n.2 (5th Cir. 2006) ("It is not clear that equitable estoppel can ever apply to the Government, but in any event, equitable estoppel will not lie against the Government as against private litigants." (citation omitted)).

> The party seeking estoppel must establish five things: (1) affirmative misconduct by the government, (2) that the government was aware of the relevant facts and (3) intended its act or omission to be acted upon, (4) that the party seeking estoppel had no knowledge of the relevant facts and (5) reasonably relied on the government's conduct and as a result of his reliance, suffered substantial injury.

*Knapp*, 796 F.3d at 461 (quoting *Robertson-Dewar*, 646 F.3d at 229). Plaintiffs seek to estop Defendants from arguing that Plaintiffs' application for an exemption from notice and comment did not satisfy the regulatory requirements of 42 C.F.R. § 431.416(g), but they fail to allege at least three of the five elements of equitable estoppel. First, Plaintiffs have not alleged any affirmative misconduct on the part of the government in approving the exemption from notice-and-comment. Plaintiffs' Amended Complaint contains no allegations that CMS knowingly or intentionally misrepresented or concealed any facts when it initially approved Plaintiffs' requested exemption from mandatory notice-and-comment. Indeed, Plaintiffs contend that the federal government properly granted Texas an exemption from notice-and-comment (even though the federal government later determined that the exemption was not justified). *Id.* ¶¶ 78-80, 169-73, 190; *see, e.g., Robertson-Dewar*, 646 F.3d at 229 ("Affirmative misconduct requires an affirmative misrepresentation or affirmative concealment of material facts by the government." (citation omitted)); *id.* ("[T]o state a cause of action for estoppel against the

12

government, a private party must allege more than mere negligence, delay, inaction, or failure to follow an internal agency guideline." (citation omitted)).

Second, Plaintiffs have not alleged that they "had no knowledge of the relevant facts." CMS's initial decision to grant the exemption was based on the material submitted in Plaintiffs' application, so the parties were in possession of the same relevant facts. 1st Amd. Compl. ¶¶ 78-80, 191. Plaintiffs allege that CMS was "aware of the relevant facts on which Texas based its claim to an exemption: Its application plainly explained the grounds on which it relied," *Id.* ¶191, but Plaintiffs too, as the authors of that application, were aware of exactly the same facts.

Third, Plaintiffs' allegation that Texas "had no knowledge that its request for an exemption was improper or legally defective,"[4] and therefore it "reasonably relied on the federal government's assurances" cannot be the basis for estoppel. *Id.* ¶¶ 193-94. "[A]ll citizens, especially citizens dealing with the government, are presumed to know the law," and thus reliance by a plaintiff on a government employee's misstatement of that law is not reasonable. *See Marine Shale Processors*, 81 F.3d at 1349-50. Each of these three failures, on its own, compels dismissal of Plaintiffs' estoppel claim.

Finally, Plaintiffs have not sufficiently alleged a waiver of sovereign immunity applicable to their estoppel claim. "Sovereign immunity is jurisdictional, and a court lacks jurisdiction to hear a claim against the United States unless the plaintiff identifies a statute in which Congress has *unequivocally* expressed a waiver of sovereign immunity in statutory text." *Premier Med. LLC v. U.S. Dep't of Justice*, Civil Action 19-1352, 2021 U.S. Dist. LEXIS 10432, at *10 (W.D.

---

[4] Paragraph 193 appears to be Plaintiffs' attempt to allege the fourth element of estoppel, that they had no knowledge of the relevant facts. However, these allegations are actually a legal conclusion and have no bearing on the required showing. Moreover, as explained above Plaintiffs' allegations demonstrate that they were aware of the relevant facts.

La. Jan. 20, 2021) (emphasis added) (citing *Lane v. Pena*, 518 U.S. 187, 192 (1996)).

Additionally, "Plaintiff must sufficiently allege a basis for subject-matter jurisdiction in the

Complaint." *Alexander v. Trump*, Civil Action No. 17-1081, 2018 U.S. Dist. LEXIS 70688, at *6

(W.D. La. Apr. 12, 2018). The only statutory waiver identified by Plaintiffs' Amended

Complaint is the APA. Plaintiffs do not allege and have not explained how a claim of equitable

estoppel is unequivocally encompassed by the APA.

### c.   The Court should dismiss Plaintiffs' Spending Clause claim (Count XI).

In Count XI, Plaintiffs claim that Defendants' April 16 Letter violates the Spending

Clause of the U.S. Constitution.  More specifically, Plaintiffs allege that by voiding the January

15 approval of the THTQIP extension, Defendants are withholding all of Texas's federal

Medicaid funding in order to coerce the state into expanding Medicaid under the Affordable Care

Act (ACA). 1st Amd. Compl. ¶¶ 199-201. This claim fails as a matter of law.

The Spending Clause concerns the "legitimacy of Congress' power to legislate" under

that authority and whether "in return for federal funds, the States agree to comply with federally

imposed conditions." *Pennhurst State Sch. & Hosp. v. Halderman*, 451 U.S. 1, 17 (1981). The

claim available under the Spending Clause against the Federal Government is that Congress has

exceeded the bounds of its authority in enacting a statute, for example by imposing coercive

conditions on states. *See, e.g., Nat'l Fed'n of Indep. Bus. v. Sebelius (NFIB)*, 567 U.S. 519, 576-

77, 580-82 (2012); *Arlington Cent. Sch. Dist. Bd. Of Educ. v. Murphy*, 548 U.S. 291, 295-96

(2006); *South Dakota v. Dole*, 483 U.S. 203, 207-08, 211-12 (1987); *Gruver v. Louisiana Bd. of

Supervisors for the Louisiana State University*, 959 F.3d 178, 182-84 (5th Cir. 2020); *Tex. Educ.

Agency v. U.S. Dept. of Educ.,* 908 F.3d 127, 135-36 (5th Cir. 2018). Plaintiffs do not make this

type of claim. They do not challenge the constitutionality of 42 U.S.C. § 1315 or any other part

of the Social Security Act, or of any congressional enactment. And to the extent the promulgation of a regulation could serve as the basis for a Spending Clause claim, Plaintiffs also have not challenged the constitutionality of any of the applicable regulations. On this basis alone, Plaintiffs have failed to state a Spending Clause claim.

The Fifth Circuit recently addressed a similar issue in *Texas v. Rettig*, 987 F.3d 518, 534 (5th Cir. 2021). In that case, several States alleged that Section 9010 of the ACA imposed a condition on Medicaid funding in violation of the Spending Clause. Among other things, the court noted that Section 9010 did not impose a condition on the States' Medicaid funding; rather, "[t]he specific Medicaid funding condition that the States contest is in the Medicaid Act . . . . 42 U.S.C. § 1396b(m)(2)(A)(iii)." *Id.* at 534. The States, however, "d[id] not contest the constitutionality of this section," and the court thus held that the States "d[id] not have a Spending Clause claim." *Id.* Similarly, here, Plaintiffs do not challenge the constitutionality of any law or regulation, and thus, their Spending Clause claim fails as a matter of law.

In addition to this insurmountable flaw, Plaintiffs' reliance on *NFIB* further demonstrates why their claim fails. First, and critically, the States in *NFIB* challenged the constitutionality of the ACA under the Spending Clause, *see supra*. Plaintiffs' Amended Complaint only attempts to assert that CMS's *actions* are "coercive" as a freestanding claim untethered to any challenge to the relevant Spending Clause legislation (the Social Security Act) itself . *See* 1st Am. Compl. ¶¶ 196-203; *Gruver*, 959 F.3d at 182 (identifying the bases on which Spending Clause legislation may be challenged). There is no basis in precedent to support such a claim.

Second, the *NFIB* Court found that the ACA was impermissibly coercive because it required states to either accept Medicaid expansion or to lose *all existing* Medicaid funding. *NFIB*, 567 U.S. at 581-82. But Plaintiffs cannot show that they will lose all or even a substantial

part of their Medicaid funding as a result of Defendants' alleged rescission of the January 15

approval.  Even if THTQIP was not extended beyond its current September 30, 2022 expiration

date and was instead terminated entirely, Texas would not lose its Medicaid funding.  The state

would merely return to the normal "without waiver" requirements of its Medicaid State Plan—

under which the federal government would continue to provide more than half of the funding to

provide health care to the state's qualifying low-income population.  *See* 42 U.S.C. § 1315; *see*

*generally* 42 U.S.C. § 1396(a) *et seq*.

Third, unlike in *NFIB*, in the present case there is no meaningful allegation of

retroactivity or unfair surprise in any applicable statute or regulation.  *See NFIB,* 567 U.S. at 583

("The Medicaid expansion, however, accomplishes a shift in kind not merely degree."); *id*. at

584 (Congress's spending power "does not include surprising participating States with

postacceptance or retroactive conditions." (citation omitted)).  As the Fifth Circuit recently

explained, the "problem in *NFIB* was that Congress had conditioned all of a state's Medicaid

funding on accepting significant obligations that created a new program entirely different than

the original one the state had opted in to." *Gruver*, 959 F.3d at 184.  Not only is Texas's basic

Medicaid State Plan unaffected by the challenged action in this case, but even if Plaintiffs had

challenged the demonstration project statute or applicable regulations, they are neither new nor

surprising.  Section 1115 of the Social Security Act was enacted in 1962, Pub.L. 87-543, Title I, §

122, 76 Stat. 192 (July 25, 1962), and was amended to require public notice and comment, along

with the implementing regulations at issue, in 2010, Pub.L. 111-148, Title II, § 2601(b)(2), 124

Stat. 315, 922 (Mar. 23, 2010).  Plaintiffs have been participating under this demonstration

project, subject to the same statutory and regulatory obligations, since 2011.  *See* Ex. A at 3; *see*

*also Gruver*, 959 F.3d at 184 (distinguishing the challenged statutory section from the ACA in

*NFIB* because it "d[id]  not resemble the creation of a brand new legislative  program," and "ha[d]

been on the books for over 30 years, all the while [the state agency] continued  to accept federal

funding."). Thus, even making  all reasonable inferences in the light  most favorable to Plaintiffs,

they have failed to allege anything  resembling  the claims in *NFIB* or indeed a Spending  Clause

claim of any kind.

## IV.     Conclusion

For the reasons stated above, the Court should  grant Defendants' Partial Motion  for

Judgment on the Pleadings  and dismiss  Counts IX, X and XI of the First Amended Complaint.

Dated:  October 4, 2021                                  Respectfully  Submitted,

BRIAN M. BOYNTON
Acting  Assistant Attorney General

NICHOLAS J. GANJEI
Acting  United States Attorney

MICHELLE BENNETT
Assistant Branch Director

*/s/ Keri L. Berman*
KERI L. BERMAN
Trial Attorney
United States Department of Justice
Civil  Division
1100  L Street NW, Rm. 11206
Washington,  DC 20005
Tel: (202) 305-7538
Email:  Keri.L.Berman@usdoj.gov

*Attorneys for Defendants*

## CERTIFICATE OF SERVICE

I hereby certify that the foregoing document was served on all counsel of record by operation of the court's electronic filing system and can be accessed through that system.

DATED: October 4, 2021

> /s/  *Keri L. Berman*
> KERI L. BERMAN
> Trial Attorney
> United States Department of Justice
> Civil Division
> 1100 L Street NW, Rm. 11206
> Washington, DC 20005
> Tel: (202) 305-7538
> Email: Keri.L.Berman@usdoj.gov

18